FILED

JUL - 6 2005

U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

ENTERED

JUL - 6 2005

U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>REBEL RENTS, INC., a California corporation,<br><br>PERRIS VALLEY RENTALS, INC., a California corporation,<br><br>Debtors.<br>_____<br><br>VINCENT GRAVES,<br><br>Plaintiff,<br><br>v.<br><br>REBEL RENTS, INC., and DOES 1 through 50, inclusive,<br><br>Defendants.<br>_____ | Case No. RS02-25442 PC<br>Jointly Administered with<br>Case No. RS02-25452 PC<br><br>Adversary No. RS04-01513 PC<br><br><br>Chapter 11<br><br><br>Date: June 16, 2005<br>Time: 9:30 a.m.<br>Place: U.S. Bankruptcy Court<br>    Courtroom 303<br>    3420 Twelfth Street<br>    Riverside, CA 92501 |

**MEMORANDUM DECISION**

Plaintiff, Vincent Graves ("Graves"), having missed the deadline to appeal the summary judgment entered on April 28, 2005, dismissing this adversary proceeding, seeks an extension of time to file a notice of appeal pursuant to Fed. R. Bankr. P. 8002(c)(2). Defendant, Rebel Rents, Inc. ("Rebel") opposes the motion. At the hearing, John T. Blanchard appeared on behalf of Graves, and William J. Wall appeared for Rebel. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to Fed. R. Civ. P. 52, as incorporated into Fed. R. Bankr. P. 7052.

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

1

I. STATEMENT OF FACTS

2      On September 23, 2002, Rebel filed its voluntary petition for reorganization under

3 chapter 11 of the Bankruptcy Code.[2] At that time, Rebel was the largest independent

4 equipment rental company in Southern California, offering a wide inventory of

5 equipment for sale or lease to construction companies, industrial concerns, commercial

6 businesses, and residential homeowners in San Bernardino, Riverside and San Diego

7 Counties.

8      On May 12, 2003, General Electric Capital Corporation ("GECC"), Rebel's largest

9 secured creditor, filed a disclosure statement and proposed plan of reorganization.

10 GECC had financed Rebel's operations both before and after the commencement of the

11 case, and its claims exceeding $23,369,000 were secured by substantially all of the

12 assets of Rebel's estate.

13      On June 25, 2003, the court entered an order approving the First Amended

14 Disclosure Statement Describing the First Amended Joint Chapter 11 Plan Proposed by

15 GE Capital Corporation, and setting a hearing on confirmation of the First Amended

16 Joint Plan of Reorganization for Rebel Rents, Inc. and Perris Valley Rentals, Inc.

17 Submitted by General Electric Capital Corporation dated June 19, 2003 ("Plan") for

18 August 5, 2003.[3] Article 4.1 of the Plan states:

19      "With the exception of those executory contracts and unexpired leases that have
been previously assumed or rejected by order of the Bankruptcy Court pursuant

20      to Bankruptcy Code section 365, as of the Effective Date, the Debtors shall
reject, pursuant to Bankruptcy Code section 365, all other executory contracts

21

22

23   [2] Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11

24 U.S.C. §§ 101-1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

25   [3] According to the Proof of Service filed on June 27, 2003, Graves was served with the disclosure
statement, plan, notice of the confirmation hearing and a ballot on June 26, 2003, at 23 Corte Latueza,

26 Lake Elsinore, CA 92532.  Graves did not file an objection either to the adequacy of the disclosure
statement or to confirmation of the plan.

27

1    and unexpired leases."[4]

2  The Plan further provided for cancellation of the old common stock of Rebel, and the

3  issuance of new equity securities in Rebel, together with new senior secured notes to

4  GECC, on the Effective Date of the Plan[5] in satisfaction of GECC's Class 2 and Class 3

5  claims against the estate.[6]

6       On July 31, 2003, Rebel filed a motion seeking authority to assume

7  approximately 50 executory contracts and unexpired leases, including the following

8  unexpired leases of non-residential real property with Graves that are the subject of this

9  adversary proceeding:

10
11
     1.    Lease of the real property at 42188 Winchester Road, Temecula,
           California dated October 6, 2000.

12
13
     2.    Lease of the real property at 24461 Highway 74, Perris, California dated
           April 10, 2001.

14
     3.    Lease of the real property at 202 East 1st Street and 121 South Cypress,
           Santa Ana, California dated November 13, 2002.

15
16
17
     4.    Lease of the real property located in the unincorporated area of Riverside
           County known as one (1) acre parcel 14 of parcel map 21383 as shown by
           map on file in Book 167, pages 18-25, inclusive, of parcel maps, Official
           Records of Riverside County, California, dated June 1, 2001.

18  Rebel's assumption motion included the following notice and opportunity to request a

19  hearing:

20       "IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED
         TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE
         MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(g),
21       OBJECTIONS MUST BE FILED WITH THE COURT WITHIN FIFTEEN (15)
         DAYS OF THE DATE OF SERVICE OF THIS NOTICE . . . . UPON RECEIPT OF
22       A WRITTEN OBJECTION AND REQUEST FOR HEARING, THE DEBTORS'

23  _____

24  [4] Plan, ¶ 4.1, at p.19.

25  [5] "Effective Date" is defined in the Plan as "[t]he first Business Day after the Confirmation Date on which
    the Confirmation Order becomes a Final Order and all conditions to the Effective Date have been satisfied
26  or, if waivable, waived. Plan ¶ 1.30, at p.5.

27  [6] Plan, ¶ 5.2-5.3, at p.21.

- 3 -

1    COUNSEL WILL OBTAIN A HEARING DATE AND GIVE APPROPRIATE
     NOTICE THEREOF.  ANY FAILURE TO TIMELY FILE AND SERVE
2    OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING WAIVED.[7]

3        On August 21, 2003, Rebel filed an amendment to its assumption motion

4    identifying an unexpired lease with Graves of certain non-residential real property

5    located at 450 N. State Street, Hemet, CA, which Rebel also intended to assume.

6    Rebel's amended motion included the following notice and opportunity to request a

7    hearing:

8
         "IF YOU DO NOT OPPOSE THE AMENDMENT TO THE MOTION DESCRIBED
9        ABOVE, YOU NEED TAKE NO FURTHER ACTION.  HOWEVER, IF YOU
         OBJECT TO THE AMENDMENT, PURSUANT TO LOCAL BANKRUPTCY RULE
10       9013-1(g), OBJECTIONS MUST BE FILED WITH THE COURT WITHIN
         FIFTEEN (15) DAYS OF THE DATE OF SERVICE OF THIS NOTICE . . . .
11       UPON RECEIPT OF A WRITTEN OBJECTION AND REQUEST FOR HEARING,
         THE DEBTORS' COUNSEL WILL OBTAIN A HEARING DATE AND GIVE
12       APPROPRIATE NOTICE THEREOF.  ANY FAILURE TO TIMELY FILE AND
         SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING
13       WAIVED.[8]

14       Graves, though properly and timely served, did not object to Rebel's assumption

15   motion, as amended, nor request a hearing.  It is undisputed that Rebel was current in

16   rent payments and not otherwise in default under any of the subject leases at the time

17   of assumption.  However, each of the unexpired leases between Rebel and Graves

18   contains the following provision:

19       "ASSIGNABILITY/SUBLETTING.  Tenant may not assign or sublease any
         interest in the Premises, nor effect a change in the majority ownership of the
20       Tenant (from the ownership existing at the inception of this lease), nor assign,
         mortgage, or pledge this Lease, without the prior written consent of Landlord,
21       which shall not be unreasonably withheld."

22
     _____
23   [7] Debtors' Motion to Reject and Assume Executory Agreements and Unexpired Leases, p.3, l.5-20.
     According to the Certificate of Service attached to the motion, Graves was served with Rebel's motion and
24   supporting documents on July 30, 2003, at 23 Corte Latueza, Lake Elsinore, CA 92532.

25   [8] Amendment Affecting Only Certain Parties to Debtors' Motion to Reject and Assume Executory
     Agreements and Unexpired Leases, p.5, l.26 to p.6, l.14. According to the Certificate of Service attached
26   to the amended motion, Graves was served with Rebel's amendment and supporting documents on
     August 21, 2003, at 23 Corte Latueza, Lake Elsinore, CA 92532.
27
                                          - 4 -

1   On August 26, 2003, an order confirming the Plan was entered in the bankruptcy

2   case.  The confirmation order became final on September 5, 2003, and the Effective

3   Date of the Plan was the first business day thereafter - Monday, September 8, 2003.

4   On November 5, 2003, the court entered an Order Granting Debtors' Motion to

5   Reject and Assume Executory Agreements and Unexpired Leases ("Assumption

6   Order"), authorizing assumption of the leases described in the motion and amendment,

7   including Rebel's unexpired leases with Graves.  Two days earlier, on November 3,

8   2003, Graves filed a complaint in Case No. 402642, styled Vincent R. Graves v. Rebel

9   Rents, Inc., in the Superior Court of Riverside County, seeking a judgment declaring

10   that Graves was entitled to terminate each of his unexpired leases with Rebel reasoning

11   that GECC's acquisition of stock in Rebel effected a "change in the majority ownership"

12   of Rebel in violation of the non-assignment provision contained in each lease.

13   On March 1, 2004, Rebel filed a notice removing the state court action to this

14   court pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027(a).  On September 2,

15   2004, Graves filed his First Amended Complaint for Declaratory Relief seeking, in

16   addition to the claims alleged in state court, to set aside the Assumption Order on the

17   grounds of alleged fraud.  Graves characterized his amended complaint as an

18   independent action for relief under Rule 60(b) of the Federal Rules of Civil Procedure.[9]

19   Graves claimed that, despite having actually received Rebel's assumption motion, he

20   was deliberately misled by Rebel into failing to respond to the motion, as amended.  On

21   March 11, 2005, the court entered a partial summary judgment in favor of Rebel,

22

23   [9] Rule 60(b) states, in pertinent part:

24   (b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** . . .
     This rule does not limit the power of a court to entertain an independent action to relieve a party
     from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally

25   notified as provided by Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court.
     . . .

26

27   Fed. R. Civ. P. 60(b) (emphasis added).

- 5 -

1  dismissing Graves' causes of action under Rule 60(b) to set aside the Assumption

2  Order and finding that Graves had not presented evidence sufficient to raise a genuine

3  issue of material fact that he was deliberately or fraudulently prevented by Rebel from

4  presenting his claim or defense to Rebel's assumption motion.  The court further found

5  that Graves' failure to respond to Rebel's assumption motion was, in fact, due to

6  negligence or lack of due diligence on his part, and further, that he had failed to set up a

7  meritorious defense to assumption of the leases in response to Rebel's summary

8  judgment motion.  On April 28, 2005, the court entered a final summary judgment

9  dismissing Graves' remaining claim against Rebel finding that the "change of

10  ownership" restriction contained in the non-assignment provision of each lease between

11  Graves and Rebel was invalid and unenforceable as a *de facto* anti-assignment clause

12  under § 365(f).[10]  The deadline to file a notice of appeal expired on May 9, 2005.[11]

13       On May 24, 2005, Graves filed a Motion for Order Extending Time for Filing

14  Notice of Appeal seeking an extension of time to file a notice of appeal pursuant to Fed.

15  _____

16  [10] Section 365(f)(1) states:

17       Except as provided in subsection (c) of this section, notwithstanding a provision in an executory
         contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or
18       conditions the assignment of such contract or lease, the trustee may assign such contract or lease
         under paragraph (2) of this subsection; . . .

19  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further states:

20
21       Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in
         applicable law that terminates or modifies, or permits a party other than the debtor to terminate or
         modify, such contract or lease or a right or obligation under such contract or lease on account of
22       an assignment of such contract or lease, such contract, lease, right, or obligation may not be
         terminated or modified under such provision because of the assumption or assignment of such
23       contract or lease by the trustee.

24  11 U.S.C. § 363(f)(3); see Crow Winthrop Dev. Ltd. P'ship. v. Jamboree LLC (In re Crow Winthrop
    Operating P'ship.), 241 F.3d 1121, 1123-24 (9th Cir. 2001) (affirming the bankruptcy court's invalidation of
25  a change in ownership provision in an executory contract as an unenforceable anti-assignment clause
    under § 365(f)).

26  [11] The 10-day period actually expired on Sunday, May 8, 2005.  Pursuant to Rule 9006(a), the last day to
    file the Notice of Appeal was extended to Monday, May 9, 2005.  Fed. R. Bankr. P. 9006(a).
27

1  R. Bankr. P. 8002(c)(2) and alleging that the failure of Graves' counsel to timely file a

2  notice of appeal was the result of "excusable neglect." On June 2, 2005, Rebel filed a

3  response in opposition to the motion arguing that the failure of Graves' counsel to

4  comply with the 10-day deadline for filing a notice of appeal was not excusable under

5  the facts of this case, and that an extension of time would prejudice Rebel in the final

6  stages of its reorganization. After a hearing on June 16, 2005, the matter was taken

7  under submission.

8                                   II. DISCUSSION

9        The court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§

10 157(b) and 1334(b).  Graves' motion is a core proceeding under 28 U.S.C. §

11 157(b)(2)(A), (M) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

12 A.  Time for Filing Notice of Appeal

13       Rule 8002(a) of the Federal Rules of Bankruptcy Procedure specifically provides

14 that a notice of appeal must be filed within 10 days from the date of entry of the

15 judgment, order or decree from which the appeal is to be taken.[12] Rule 8002's

16 provisions are jurisdictional and are strictly construed.  Delaney v. Alexander (In re

17 Delaney), 29 F.3d 516, 518 (9th Cir. 1994); Slimick v. Silva (In re Slimick), 928 F.2d 304,

18 306 (9th Cir. 1990); Greene v. United States (In re Souza), 795 F.2d 855, 857 (9th Cir.

19 _____

20 [12] Rule 8002(a) states:

21     **TEN-DAY PERIOD.  The notice of appeal shall be filed with the clerk within 10 days of the date of
        the entry of the judgment, order, or decree appealed from.**  If a timely notice of appeal is filed by a
22     party, any other party may file a notice of appeal within 10 days of the date on which the first
        notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period
23     last expires.  A notice of appeal filed after the announcement of a decision or order but before
        entry of the judgment, order, or decree shall be treated as filed after such entry and on the date
24     thereof.  If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate
        panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note
25     thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed
        with the clerk on the date so noted.

26 Fed. R. Bankr. P. 8002(a) (emphasis added).

27                                   - 7 -

1  1986).  Therefore, the timely filing of a notice of appeal is mandatory.  Warrick v.

2  Birdsell (In re Warrick), 278 B.R. 182, 185 (9th Cir. BAP 2002); Key Bar Invs., Inc. v.

3  Cahn (In re Cahn), 188 B.R. 627, 630 (9th Cir. BAP 1995).

4      If the 10-day deadline for filing a notice of appeal has expired, Rule 8002(c)(2)

5  authorizes the bankruptcy court to extend the time for filing the notice of appeal if the

6  party requesting an extension files a written motion not later than 20 days after the

7  expiration of the time for filing a notice of appeal and establishes that the failure to

8  timely file a notice of appeal was the result of excusable neglect.[13]  Fed. R. Bankr. P.

9  8002(c)(2).  Graves' motion for extension of time under Rule 8002(c)(2) is timely in that

10 it was filed within 20 days after expiration of the May 9, 2005 deadline to file a notice of

11 appeal in this adversary proceeding.  The only remaining issue is whether Graves has

12 met his burden of establishing "excusable neglect."

13 B.  Excusable Neglect

14      1.  The Pioneer Factors

15 _____

16 [13] Rule 8002(c) states:

17    **Extension of Time for Appeal.**

18    (1) The bankruptcy judge may extend the time for filing the notice of appeal by any party, unless
       the judgment, order, or decree appealed from:

19
           (A) grants relief from an automatic stay under § 362, § 922, § 1201, or § 1301;
20         (B) authorizes the sale or lease of property or the use of cash collateral under § 363;
           (C) authorizes the obtaining of credit under § 364;
21         (D) authorizes the assumption or assignment of an executory contract or unexpired lease
               under § 365;
22         (E) approves a disclosure statement under § 1125; or
           (F) confirms a plan under § 943, § 1129, § 1225, or § 1325 of the Code.

23
24    (2) A request to extend the time for filing a notice of appeal must be made by written motion filed
       before the time for filing a notice of appeal has expired, except that such a motion filed not later
       than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a
25     showing of excusable neglect.  An extension of time for filing a notice of appeal may not exceed
       20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this
       rule or 10 days from the date of entry of the order granting the motion, whichever is later.
26

27 Fed. R. Bankr. P. 8002(c).

- 8 -

1    The Supreme Court enunciated the standard for determining "excusable

2  neglect" in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380

3  (1993). In that case, Brunswick Associates, Ltd., Clinton Associates Limited

4  Partnership, Ft. Oglethorpe Associates Limited Partnership, and West Knoxville Limited

5  Partnership (collectively, "Brunswick"), creditors of Pioneer Investment Services

6  Company ("Pioneer"), received a "Notice for Meeting of Creditors" in Pioneer's chapter

7  11 bankruptcy setting a creditors' meeting for May 5, 1989. The notice also contained a

8  bar date of August 3, 1989, to file proofs of claim in the case. Brunswick retained Marc

9  Richards ("Richards") to represent them in the bankruptcy, and Brunswick delivered to

10  Richards the notice and a file containing all pertinent documents regarding their claims

11  at least two months prior to the claims deadline. Brunswick also specifically asked

12  Richards whether there was a deadline to file claims, to which Richards incorrectly

13  responded that no such date had been set by the court.

14    On August 23, 1989, Brunswick filed their proofs of claim together with a motion

15  under Rule 9006(b)(1) seeking a 20-day enlargement of the deadline to file claims on

16  the ground of excusable neglect. Fed. R. Bankr. P. 9006(b)(1). In support of the

17  motion, Richards claimed that he did not have access to his file and was unaware of the

18  bar date because the deadline "came at a time when he was experiencing 'a major and

19  significant disruption' in his professional life caused by his withdrawal from his former

20  law firm on July 31, 1989." Id. at 384. The bankruptcy court denied Brunswick's

21  motion, finding that Richards had actual notice of the claims deadline and that the

22  reason for the delay was not outside his control. Id. at 385-86. The bankruptcy court

23  further found that Richards was negligent in failing to file the proofs of claim prior to the

24  bar date, stating that Richards' "actions indicated an indifference to the bar date and the

25  orders of the court." Brunswick Assocs. Ltd. P'ship. v. Pioneer Inv. Servs. Co. (In re

26  Pioneer Inv. Servs. Co.), 943 F.2d 673, 677 (6th Cir. 1991), aff'd, 507 U.S. 380 (1993).

27

- 9 -

1   The district court affirmed.  Pioneer, 507 U.S. at 386.

2         The Court of Appeals for the Sixth Circuit reversed and remanded, holding that

3   the record supported a finding of excusable neglect.  In so holding, the Sixth Circuit

4   found "it significant that the notice containing the bar date was incorporated in a

5   document entitled 'Notice for Meeting of Creditors'," and that creditors had not been

6   given a specific notice of the claims deadline on Form 16.[14]  Brunswick Assocs., 943

7   F.2d at 678.  The Sixth Circuit stated:

8         While we do not suggest that the court was obligated to notify creditors in
        precisely this form, the comparison between this Form 16 notice and the notice
9         actually given in this case suggests the dramatic ambiguity of the latter.  This
        ambiguity is exacerbated by the fact that the notice was simply and
10        inconspicuously labeled "Bar date" without any reference to its significance as a
        deadline for the filing of proof of claims.  Even persons experienced in
11        bankruptcy might confuse such a label for other deadlines.

12   Id. (emphasis added).

13        The Supreme Court affirmed, holding that a finding of "excusable neglect" was

14   "not limited strictly to omissions caused by circumstances beyond the control of the

15   movant," but was an "elastic concept" that included, in appropriate circumstances,

16   errors resulting from negligence, including inadvertence, mistake or carelessness.

17   Pioneer, 507 U.S. at 392.  The Court explained that the issue of whether admitted

18   neglect can be excused is an equitable determination that incorporates all relevant

19   factors, including (1) danger of prejudice to the non-movant; (2) length of delay and its

20   potential impact on judicial proceedings; (3) the reason for the delay, including whether

21   it was within the reasonable control of the movant, and (4) whether the movant acted in

22   good faith.  Id. at 395.  However, the Supreme Court reiterated in Pioneer that

23   "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually

24

25   [14] Form No.16, Order for Meeting of Creditors and Related Orders, Combined With Notice Thereof and of
    Automatic Stay is one of 35 official forms incorporated into the Bankruptcy Rules and Official Forms
26   prescribed by order of the Supreme Court on April 25, 1983, pursuant to 28 U.S.C. § 2075.  The
    Bankruptcy Rules and Official Forms became effective on August 1, 1983.
27

- 10 -

1   constitute 'excusable' neglect." Id. at 392.  The Court also clarified that clients must be

2   "held accountable for the acts and omissions of their chosen counsel." Id. at 396.

3        In reaching its conclusion in Pioneer, the Supreme Court gave "little weight" to

4   Richards' excuse that he was "experiencing upheaval in his law practice at the time of

5   the bar date." Id. at 398.  The Court, like the Sixth Circuit, focused on the ambiguous

6   form of the bar date notice, coupled with the lack of any evidence of bad faith, prejudice

7   to the debtor, or delay in the judicial administration of the case, stating that:

8        "the 'peculiar and inconspicuous placement of the bar date in a notice regarding
         a creditors['] meeting,' without any indication of the significance of the bar date,
9        left a 'dramatic ambiguity' in the notification."

10  Id. at 398.

11        2. Excusable Neglect in the Ninth Circuit

12        Prior to Pioneer, the Ninth Circuit enforced a strict standard for determining

13  excusable neglect.  Pratt v. McCarthy, 850 F.2d 590, 592 (9th Cir. 1988); Alaska

14  Limestone Corp. v. Hodel, 799 F.2d 1409, 1411 (9th Cir. 1986) (per curiam); Oregon v.

15  Champion Int'l Corp., 680 F.2d 1300, 1301 (9th Cir. 1982).  Enlargement of an appeal

16  deadline based upon excusable neglect was permitted only upon a finding that

17  extraordinary circumstances prevented a timely filing and that denying the appeal would

18  result in an injustice.  Islamic Republic of Iran v. Boeing Co., 739 F.2d 464, 465 (9th Cir.

19  1984); see, e.g., Pratt, 850 F.2d at 594 (holding that the district court abused its

20  discretion in finding that a mis-communication between counsel regarding the filing of

21  the notice of appeal constituted excusable neglect to enlarge an appeal deadline);

22  Alaska, 799 F.2d at 1412 (affirming the denial of a 30-day extension to an appeal

23  deadline, and holding that the clerk's failure to notify counsel of the entry of a final

24  judgment was not a basis for finding excusable neglect); Oregon, 680 F.2d at 1301

25  (affirming the denial of a 1-day appeal deadline extension, and holding that counsel's

26  error in addressing the notice of appeal to the state court rather than the federal court

27

- 11 -

did not constitute excusable neglect).  Inadvertence or mistake of counsel simply did not constitute excusable neglect.  See, e.g., Pratt, 850 F.2d at 592 (stating that "[t]o find excusable neglect on these facts would be to run roughshod over our existing precedent and the purpose of Rule 4(a)"); Alaska, 799 F.2d at 1411 (opining that "[i]nadvertence or mistake of counsel, including that attributable to office staff, does not constitute excusable neglect under this standard"); Oregon, 680 F.2d at 1301 (stating that "[e]xtending the excusable neglect exception to clerical errors of counsel or counsel's staff would be inconsistent with the Advisory Committee's intent to limit the exception to extraordinary cases and would thwart the Rule's purpose of promoting finality of judgments").  Nor did ignorance of court rules constitute excusable neglect, even if the litigant had appeared pro se.  Swimmer v. Internal Revenue Serv., 811 F.2d 1343, 1345 (9th Cir. 1987).

Shortly after Pioneer, the Ninth Circuit in Kyle v. Campbell Soup Co., 28 F.3d 928 (9th Cir. 1994) held that the district court abused its discretion in finding excusable neglect based upon an attorney's mistaken belief that a 30-day deadline to file a post-trial motion for attorneys fees could be enlarged three days when service of the motion was effectuated by mail.  Id. at 932.  In so holding, the court stated:

> In this case, the district court found that counsel acted in good faith, that he had not demonstrated professional incompetence, and that Campbell Soup would not be prejudiced by allowing the time enlargement.  Although these factors might support a finding of excusable neglect in a case involving different facts, we hold that they do not suffice where the only claimed neglect is an attorney's addition of three days for service by mail to a time period running from docketing of an order or judgment.

Id. at 931.  The Ninth Circuit distinguished Pioneer and explained that its review of the district court's application of the Pioneer factors did not compel a contrary holding, stating:

> In Pioneer, the Court concluded that where the notice given a party about a court-ordered filing deadline contains a "'dramatic ambiguity' which could . . . confuse 'even persons experienced in bankruptcy,'" it would be error to conclude that, absent prejudice to the other party, failure to comply with the deadline was

- 12 -

1    not excusable neglect.

2    By contrast, counsel in this matter committed a mistake in interpreting and applying the Local Rules and Rule 6(e) of the Federal Rules of Civil Procedure,

3    which were <u>not</u> ambiguous. This form of neglect was not excusable. Although the Court in <u>Pioneer</u> recognized that "excusable neglect" is a flexible, equitable

4    concept, the Court also reminded us that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." In

5    this case, counsel has not presented a persuasive justification for his misconception of nonambiguous rules. Accordingly, there is no basis for

6    deviating from the general rule that a mistake of law does not constitute excusable neglect.

7    <u>Id</u>. at 931-32 (citations omitted).

8         Two years later, the Ninth Circuit in <u>Marx v. Loral Corp.</u>, 87 F.3d 1049 (9th Cir.

9    1996) affirmed a district court's 1-day extension of the deadline to file a notice of appeal

10    under Rule 4(a)(1) based upon a finding that difficulties encountered by plaintiffs'

11    counsel in meeting with all members of the plaintiff class to discuss the appeal

12    constituted excusable neglect. <u>Id</u>. at 1054. In so holding, the Ninth Circuit noted its

13    long-standing rule that "[i]nadvertence or mistake of counsel does not constitute

14    excusable neglect." <u>Id</u>. at 1053. However, the Ninth Circuit explained that the district

15    court had weighed the relevant factors set forth in <u>Pioneer</u>, and had specifically found

16    that:

17         Plaintiffs have demonstrated that consultation difficulties hindered their prompt pursuit of appeal. There is no evidence of prejudice to the Defendants or to

18         judicial administration, and certainly no indication of bad faith.

19    <u>Id</u>. at 1054. The Ninth Circuit concluded that "[t]he district court's analysis of the

20    <u>Pioneer Inv.</u> factors in this case, <u>although considerably lenient to the plaintiffs</u>, was not a

21    clear error of judgment." <u>Id</u>. (emphasis added).

22         In <u>Briones v. Riviera Hotel & Casino</u>, 116 F.3d 379 (9th Cir. 1996), the Ninth

23    Circuit vacated a district court's denial of a <u>pro se</u> litigant's Rule 60(b) motion for relief

24    from a judgment dismissing the case based on excusable neglect. <u>Id</u>. at 382. Briones,

25    who was representing himself and was not proficient in English, had failed to notify his

26    translator and typist of the deadline for responding to a dismissal motion. <u>Id</u>. at 380.

27

- 13 -

Citing <u>Kyle</u>, the court stated that "although a late filing will ordinarily not be excused by

negligence," <u>Pioneer</u> simply means "that possibility is by no means foreclosed." <u>Id.</u> at

382.  The court concluded that:

> While <u>pro se</u> litigants are not excused from following court rules, <u>it is not apparent</u>
> <u>that Briones' failure to respond to the motion to dismiss resulted only from a</u>
> <u>failure to read and attempt to follow court rules</u>.  It may have been a
> communication problem within his group of assistants.  In light of <u>Pioneer</u> and the
> holding in this case, it is appropriate for the district court to reconsider its decision
> to deny plaintiff's motion to set aside judgment.

<u>Id.</u> (emphasis added).

Four years after <u>Briones</u>, the Ninth Circuit in <u>Bateman v. United States Postal</u>

<u>Serv.</u>, 231 F.3d 1220 (9th Cir. 2000) reversed a district court's denial of a motion under

Rule 60(b)(1) for relief from a summary judgment, finding that the district court had

failed to conduct the equitable analysis mandated by <u>Pioneer</u> in concluding that the

failure to respond to the summary judgment motion was not the result of excusable

neglect.  <u>Id.</u> at 1225.  Specifically, Ninth Circuit held that the district court failed to apply

the correct legal standard by not considering the prejudice to the defendant, length of

delay and its potential impact on judicial proceedings, and whether the movant acted in

good faith, stating:

> The court would have been within its discretion if it spelled out the equitable test
> and then concluded that Emeziem had failed to present any evidence relevant to
> the four factors.  But it abused its discretion by omitting the correct legal standard
> altogether.

<u>Id.</u> at 1224.

Shortly thereafter, the Ninth Circuit decided <u>Speiser, Krause & Madole P.C. v.</u>

<u>Ortiz</u>, 271 F.3d 884 (9th Cir. 2001).  In that case, Speiser, Krause & Madole, P.C.

("Speiser") had filed suit against Rudy A. Ortiz & Rudy A. Ortiz & Associates

(collectively, "Ortiz") in state court seeking a judicial determination of the attorneys fees

due each firm under a fee agreement between the parties.  Ortiz removed the suit to

federal court, and then failed to file an answer to the complaint within the time

1   prescribed by Rule 81(c) of the Federal Rules of Civil Procedure.  Speiser caused

2   Ortiz's default to be entered, and notified Ortiz that it intended to seek a default

3   judgment.  In response, Ortiz filed a motion to set aside the default judgment and to

4   enlarge the time under Rule 81(c) to file an answer in the case.  The district court

5   denied the motion, finding that Ortiz's admitted failure to read and carefully understand

6   Rule 81(c)'s answer deadline did not constitute excusable neglect.  Id. at 886.  Citing its

7   prior decision in Kyle, the Ninth Circuit affirmed, stating:

8           While an attorney's egregious failure to read and follow clear and unambiguous
            rules might sometimes be excusable neglect, "mistakes construing the rules do
9           not usually constitute 'excusable' neglect."  As we have said in a similar situation,
            "counsel has not presented a persuasive justification for his misconstruction of
10          nonambiguous rules.  Accordingly, there is no basis for deviating from the
            general rule that a mistake of law does not constitute excusable neglect."

11  Id. at 886 (citations omitted).  See also Comm. for Idaho's High Desert, Inc. v. Yost, 92

12  F.3d 814, 825 (9th Cir. 1996) (following Kyle and holding that counsel's ignorance of the

13  amended procedural rules for filing an application for attorneys fees was not excusable

14  neglect).

15          Recently, the Ninth Circuit in Pincay v. Andrews, 389 F.3d 853 (9th Cir. 2004) (en

16  banc), cert. denied, ___ U.S. ___, 125 S.Ct. 1726, 161 L. Ed. 2d 602 (2005), held that

17  an attorney's culpable conduct is not "per se" inexcusable, stating that "[a]ny rationale

18  suggesting that misinterpretation of an unambiguous rule can never be excusable

19  neglect" is inconsistent with Pioneer.  Id. at 859.  In Pincay, an attorney who had

20  negligently delegated to a paralegal the responsibility for properly calculating and

21  calendaring an appeal deadline, failed to timely file a notice of appeal and filed a motion

22  seeking an extension of time.  Counsel described the reason for the delay as "the failure

23  of a 'carefully designed' calendaring system operated by experienced paralegals that

24  heretofore had worked flawlessly."  Id.  The district court found excusable neglect and

25  granted the motion.  Id. at 855-56.  The Ninth Circuit ultimately affirmed, holding that the

26  district court did not abuse its discretion in finding excusable neglect and permitting the

27

- 15 -

1  filing of the notice of appeal based upon its application of the <u>Pioneer</u> factors. <u>Id</u>. at

2  860. In so holding, the Ninth Circuit stated:

3          In this case the mistake itself, the misreading of the Rule, was egregious,
   and the lawyer undoubtedly should have checked the Rule itself before relying on
4  the paralegal's reading. Both the paralegal and the lawyer were negligent. That,
   however, represents the beginning of our inquiry as to whether the negligence is
5  excusable, not the end of it. The real question is whether there was enough in
   the context of this case to bring a determination of excusable neglect within the
6  district court's discretion.

7          We therefore turn to examining the <u>Pioneer</u> factors as they apply here.
   The parties seem to agree that three of the factors militate in favor of
8  excusability, and they focus their arguments on the remaining factor: the reason
   for the delay. . . .

9          <u>We recognize that a lawyer's failure to read an applicable rule is one of
10 the least compelling excuses that can be offered</u>; yet the nature of the contextual
   analysis and the balancing of the factors adopted in <u>Pioneer</u> counsel against the
11 creation of any rigid rule. Rather, the decision whether to grant or deny an
   extension of time to file a notice of appeal should be entrusted to the discretion of
12 the district court because the district court is in a better position than we are to
   evaluate factors . . . . Had the district court declined to permit the filing of the
13 notice, we would be hard pressed to find any rationale requiring us to reverse.

14 <u>Id</u>. at 858-59 (emphasis added).

15         3. <u>Pioneer's Application to Graves' Claim of Excusable Neglect</u>

16         <u>Pioneer</u> requires that the issue of excusable neglect be determined in the context

17 of the particular case. <u>Pincay</u>, 389 F.3d at 859 (stating that the "question is whether

18 there [is] enough in the context of [the] case to bring a determination of excusable

19 neglect within the . . . court's discretion"). The burden of presenting facts demonstrating

20 excusable neglect is on the movant. <u>Cahn</u>, 188 B.R. at 631; <u>In re Pac. Gas & Elec. Co.</u>,

21 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004). Because <u>Pioneer's</u> four factors are non-

22 exclusive, the court is permitted to take "account of all relevant circumstances

23 surrounding the party's omission" in making an equitable determination. <u>Pioneer</u>, 507

24 U.S. at 395; <u>see</u> <u>Briones</u>, 116 F.3d at 382 n.2 (noting that "we will ordinarily examine all

25 of the circumstances involved rather than holding that any single circumstance in

26 isolation compels a particular result regardless of other factors"). Such circumstances

27

1   may include the procedural context in which the extension is sought.  <u>Dix v. Johnson (In</u>

2   <u>re Dix)</u>, 95 B.R. 134, 137 (9th Cir. BAP 1988).  <u>Pioneer</u> mandated a balancing test for

3   divining excusable neglect, but <u>Pioneer</u> did not assign the weight to be accorded by the

4   court to each of its non-exclusive factors in making an equitable determination.  <u>See</u>

5   <u>Pincay</u>, 389 F.3d at 860 (stating that "we leave the weighing of <u>Pioneer's</u> equitable

6   factors to the discretion of the . . . court in every case"); <u>Lowry v. McDonnell Douglas</u>

7   <u>Corp.</u>, 211 F.3d 457, 463 (8th Cir. 2000) (stating that "[t]he four <u>Pioneer</u> factors do not

8   carry equal weight"), <u>cert. denied</u>, 531 U.S. 929 (2000).

9        a. <u>Danger of Prejudice to the Debtor</u>

10       According to Graves, "[t]here does not appear to be any prospect of prejudice" to

11   Rebel because "nothing about [Rebel's] business will change during the pendency of

12   the delayed appellate proceedings."[15]  Graves promises to diligently pursue the appeal,

13   "without any request for continuance or postponement," if the motion is granted.[16]

14   Rebel disagrees, arguing that it "is in the final stages of its reorganization" and that

15   "allowing Graves to proceed with the appeal will result in actual prejudice to the

16   Debtor."[17]  Specifically, Rebel maintains that it will be unable to close the case and will

17   incur unremitting liability for the payment of quarterly fees and attorneys fees "if it must

18   continue to consult with counsel to insure compliance with the Bankruptcy Code and

19   UST regulations" during the pendency of the appeal.[18]

20       Rebel remains liable for the payment of quarterly fees to the United States

21   Trustee until a final decree is entered and the case is closed, or the case is converted or

22   dismissed.  28 U.S.C. § 1930(a)(6).  Based on disbursements, Rebel has incurred

23   _____

24   [15]  Graves' motion, p.6, l.21-24.

25   [16]  <u>Id</u>. at p.6, l.26-27.

26   [17]  Rebel's Opposition, p.4, l.10 - p.5, l.2.

27   [18]  <u>Id</u>. at p.4, l.22-27.

- 17 -

1   liability for statutory fees of approximately $8,000 per quarter since confirmation of its

2   plan of reorganization.  However, Rebel did not submit a declaration or other evidence

3   to substantiate its claim of actual prejudice nor the costs and attorney's fees that will be

4   incurred by the estate if the motion is granted.[19]  Rebel has not sought entry of a final

5   decree nor is there evidence that Rebel is preparing to do so.  Because Rebel sustained

6   no perceived prejudice directly attributable to the delay, the court weighs this <u>Pioneer</u>

7   factor narrowly in favor of Graves.

8          b. <u>Length of the Delay and Its Potential Impact on Judicial Proceedings</u>

9          Graves' motion was filed 15 days after expiration of the appeal deadline on May

10   9, 2005.  The motion was timely under Rule 8002(c)(2).  The delay was not significant,

11   and Graves' action in seeking an extension does not, in and of itself, adversely affect

12

13   [19]  Nor does Rebel explain precisely why the bankruptcy case cannot be closed.  Section 350(a) of the
Code states that "[a]fter an <u>estate</u> is fully administered ..., the court shall close the case." [emphasis

14   added].  11 U.S.C. § 350(a).  However, as the Bankruptcy Appellate Panel observed in <u>Menk v. Lapaglia
(In re Menk)</u>, 241 B.R. 896 (9th Cir. BAP 1999):

15

16          The Bankruptcy Code contemplates that various activities may occur after closing.  The fact that
          the estate has been fully administered merely means that all available property has been collected
          and all required payments made.

17

18   <u>Id.</u> at 911.  Rule 3022, which implements § 350(a) in chapter 11 cases, provides that

19          "After an <u>estate</u> is fully administered in a chapter 11 reorganization case, the court, on its own
          motion or on the motion of a party in interest, shall enter a final decree closing the case."

20   Fed. R. Bankr. P. 3022.  "Factors that the court should consider in determining whether the estate has
been fully administered include whether the order confirming the plan has become final, whether deposits

21   required by the plan have been distributed, whether the property proposed by the plan to be transferred
has been transferred, whether the debtor or the successor of the debtor under the plan has assumed the

22   business or the management of the property dealt with by the plan, whether payments under the plan
have commenced, and <u>whether all motions, contested matters, and adversary proceedings have been

23   finally resolved</u>."  Advisory Committee Note (1991) (emphasis added).  However, all of the factors in the
Committee Note need not be present before the court will enter a final decree.  <u>In re Mold Makers, Inc.</u>,

24   124 B.R. 766, 768 (Bankr. N.D. Ill. 1990).  <u>But see</u> <u>Greenfield Drive Storage Park v. Ca. Para-Professional
Servs., Inc. (In re Greenfield Drive Storage Park)</u>, 207 B.R. 913, 918 (9th Cir. BAP 1997) (opining that the

25   chapter 11 case could not be closed as a "fully administered case" because "unresolved matters
concerning the estate remain[ed] to be decided"); <u>In re 1095 Commonwealth Avenue Corp.</u>, 213 B.R. 794,

26   795 (Bankr. D. Mass. 1997) (holding that a bankruptcy case is not fully administered and quarterly fees
continue to accrue under 28 U.S.C. § 1930(a)(6), until a pending appeal is resolved), <u>aff'd</u>, 236 B.R. 530

27   (D. Mass. 1999).

1  judicial proceedings.  However, it is "important for the court to determine whether

2  granting an extension would unduly delay the administration of the bankruptcy case,"

3  given "the unique context of bankruptcy proceedings."  <u>Nugent v. Betacom of Phoenix,</u>

4  <u>Inc. (In re Betacom of Phoenix, Inc.)</u>, 250 B.R. 376, 381 n.6 (9th Cir. BAP 2000).

5      The court takes judicial notice of the fact that Rebel filed its voluntary petition for

6  reorganization on September 23, 2002, and confirmed its plan of reorganization on

7  August 26, 2003.  Thirty-four adversary proceedings were filed in this case after

8  confirmation of Rebel's plan.  All, but one, have been resolved.  There are no other

9  pending adversary proceedings nor are there any pending appeals.  Indeed, there has

10  been no activity in this bankruptcy for the past year, except the ongoing litigation by

11  Graves against the debtor.[20]  Rebel is ready to exit bankruptcy and "to function as any

12  other business entity, under its own power in its usual ways of conducting business,

13  without judicial restraint or interference, complying with all applicable laws and its

14  agreements."  <u>Barber v. Bettendorf Bank, N.A. (In re Pearson Indus., Inc.)</u>, 152 B.R.

15  546, 557 (Bankr. C.D. Ill. 1993).

16      Graves acknowledges that "[s]ome decisions of the Court regarding the affairs of

17  debtors in the Bankruptcy Court must become final very rapidly in order to avoid delays

18  that operate to the detriment of all parties to such proceedings."[21]  In the court's view,

19  this is one of those decisions.  Graves' attack on the Assumption Order is at the heart of

20  the dispute between the parties.  By virtue of the Assumption Order entered on

21  November 5, 2003, Rebel assumed 43 executory contracts and unexpired leases and

22  rejected another 25 executory contracts and unexpired leases in conjunction with

23  confirmation of its Plan.  Though properly served with Rebel's assumption motion,

24  _____

25  [20] Graves concedes that Rebel's bankruptcy case may have to remain open during the pendency of the
    appeal.  Graves' reply, p.4, l.4-5.
26

27  [21] Graves' motion, p.8, l.4-6.

                                    - 19 -

1   Graves did not file an objection nor request a hearing.  After being served with the

2   proposed Assumption Order on November 3, 2003, Graves did not object to its entry

3   nor file a notice of appeal.[22]  Rather, Graves attacked the Assumption Order in state

4   court and later characterized his complaint as an independent action under Rule 60(b).

5   When summary judgment was entered against him and the appeal deadline passed,

6   this motion ensued.

7         The Ninth Circuit recognizes that strict enforcement of the 10-day appeal period

8   under Rule 8002(a) "is justified by the 'peculiar demands of a bankruptcy proceeding,'

9   primarily the need for expedient administration of the [b]ankruptcy estate aided by

10  certain finality of orders issued by the [c]ourt in the course of administration."  Galt v.

11  Jericho-Britton (In re Nucorp Energy, Inc.), 812 F.2d 582, 584 (9th Cir. 1987), quoting

12  Matter of Thomas, 67 B.R. 61, 62 (Bankr. M.D. Fla. 1986); see Betacom, 250 B.R. at

13  381 n.6.  The abbreviated time constraints for filing a notice of appeal in bankruptcy

14  which are jurisdictional in nature serve to "[assure] prompt appellate review, often

15  important to the administration of a case under the Code."  Advisory Committee Note

16  (1983).  They also provide a definite point, in the absence of a notice of appeal, that

17  litigation will come to an end.  Given the policy favoring the finality of bankruptcy orders,

18  acceleration of appeals, the context of the dispute between the parties, and the

19  advanced stage of Rebel's reorganization, the court weighs this Pioneer factor heavily

20  in favor of Rebel.

21

22

---

23  [22]  Rule 8002(c)(1)(D) prohibits a bankruptcy judge from extending the 10-day deadline to file a notice of
24  appeal if the order appealed from authorizes the assumption or assignment of an executory contract or
    unexpired lease under § 365, even if a motion for extension of time is filed within the 10-day time period.
25  Fed. R. Bankr. P. 8002(c)(1)(D).  As explained in the Advisory Committee Note accompanying the rule,
    "[t]hese types of orders are often relied upon immediately after they are entered and should not be
26  reviewable on appeal after the expiration of the original appeal period."  Advisory Committee Note (1997).
    Had Graves missed the appeal deadline for the Assumption Order, there would have been no remedy
27  under Rule 8002(c)(2).

- 20 -

c. <u>Reason for the Delay, Including Whether It Was Within The Reasonable</u>
<u>Control of the Movant</u>

It is undisputed that the sole reason for the delay was the admitted negligence of Graves' counsel, and that the delay was squarely within his control. Graves' counsel did not miss the appeal deadline due to ill health or disability, a delay in the mail, a mis-communication or failure to communicate with his client, a misguided instruction from a court clerk or judicial officer, or a "dramatic ambiguity" between relevant procedural rules. Nor was Graves' counsel the unwitting victim of an aberration in an otherwise fail-safe calendaring system. Graves' counsel, an attorney with 31 years experience who has litigated appeals in both state and federal court, failed to read and comprehend the plain, unambiguous language of Rule 8002(a).

Graves admits that his counsel "negligently overlooked" Rule 8002(a)'s 10-day deadline to file the notice of appeal, stating that the primary focus of his attention was elsewhere.[23] In his words,

"Plaintiff's counsel misread, misunderstood the hierarchy (over F.R.App.P. Rule), or unconsciously blocked out the 10 day limitation while focusing on other issues.[24]

_____

[23] In his motion, Graves states:

" . . . while plaintiff's counsel promptly began his review of applicable Bankruptcy Rules and precedent construing those Rules, <u>the primary focus of his attention had been on unique alternatives</u> – appeal to the Bankruptcy Appellate Panel or to the District Court – <u>presented by plaintiff's appeal, he negligently overlooked the crucial 10 day time limitation stated in F.R.Bk.P. Rule 8002(a).</u>

<u>Id.</u> at p.3, l.27 to p.4, l.3. Graves' counsel admits in a declaration filed in support of the motion that the notice of appeal "was not timely solely because of my ignorance and neglect." Declaration of John T. Blanchard, p.10, l.11. He further admits that he "inadvertently misread the crucial provision of F.R.Bk.P. Rule 8002(a)" and that the "error should not have occurred." Declaration of John T. Blanchard, p.10, l.23-26.

[24] Graves' motion, p.7, l.19-21. In his reply, Graves further admits:

"It is, of course, difficult to describe, after the fact, how a simple statement [Rule 8002(a)'s 10-day deadline] that now stands astride these proceedings as a colossus was overlooked. But it was."

- 21 -

1        Rule 8002(a) is the <u>only</u> relevant rule governing the deadline to file a notice of

2   appeal in this adversary proceeding.  Rule 8002(a)'s 10-day limitation is crystal clear

3   and the lapse by Graves' counsel is egregious.  Counsel has not presented a

4   persuasive justification for his utter failure to read and carefully understand the clear

5   and unambiguous mandate of Rule 8002(a).  <u>Speiser</u>, 271 F.3d at 886; <u>Kyle</u>, 28 F.3d at

6   931-32.

7        The Ninth Circuit in <u>Pincay</u> stated that "a lawyer's mistake of law <u>reading</u> a rule of

8   procedure is not a compelling excuse."  <u>Pincay</u>, 389 F.3d at 860 (emphasis added).  If,

9   as the Supreme Court explained in <u>Pioneer</u>, the misinterpretation of unambiguous

10   procedural rules usually goes against finding excusable neglect,[25] the failure of Graves'

11   counsel to read and follow Rule 8002(a)'s clear and unambiguous language setting the

12   deadline to file a notice of appeal is inexplicable.  Therefore, the court weighs this

13   <u>Pioneer</u> factor heavily in favor of Rebel.

14        d. <u>Whether the Movant Acted in Good Faith</u>

15        There is no evidence that Graves acted with bad faith in filing his motion.

16   Indeed, Rebel admits that it "does not attribute any bad faith or gamesmanship to the

17   actions of Plaintiff or his counsel for the delay in making the Motion."[26]

18        III. CONCLUSION

19        Absence of prejudice and the existence of good faith do not trump an attorney's

20   ignorance or misunderstanding of unambiguous rules of procedure, particularly when

21   the granting of an extension would unduly delay the administration of a bankruptcy

22   case.  While two factors tip narrowly in favor of Graves, the court balances the totality of

23   the <u>Pioneer</u> factors in favor of Rebel and finds that Graves has not discharged his

24   ───────────────

25   Graves' reply, p.4, l.25-26.

26   [25] <u>Pioneer</u>, 507 U.S. at 392.

27   [26] Rebel's Opposition, p.6, l.7-8.

- 22 -

1  burden to establish that his failure to timely file a notice of appeal was the result of

2  excusable neglect.  Accordingly, Graves' motion for an extension of time to file a notice

3  of appeal in this adversary proceeding pursuant to Rule 8002(c)(2) is denied.

4      The court will enter a separate order consistent with this opinion.

5  DATED:  July 6, 2005.

                                        Peter H. Carroll
6                                       United States Bankruptcy Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| | |
|---|---|
| In re  REBEL RENTS, INC., a California corporation, | CHAPTER 11 |
| Debtor. | CASE NUMBER RS 02-25442 PC |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.    You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

was entered on *(specify date)*:    JUL - 6 2005

2.    I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:    JUL - 6 2005

Dated:

        JUL - 6 2005

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
              *Deputy Clerk*

---

*Rev. 1/01*  This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9021-1.1**

Service List


Rebel Rents, Inc.
42188 Winchester Road
Temecula, CA 92590


Paul J. Couchot, Esq.
William J. Wall, Esq.
Winthrop Couchot, P.C.
660 Newport Center Drive
4th Floor
Newport Beach, CA 92660


United States Trustee
3685 Main Street
Suite 300
Riverside, CA 92501


John T. Blanchard, Esq.
Law Offices of John T. Blanchard, P.C.
1900 Avenue of the Stars
Suite 2500
Los Angeles, CA 90067-4506


Michael K. Collins, Esq.
Hill, Farrer & Burrill, LLP
300 South Grand Avenue
37th Floor
Los Angeles, CA 90071


John A. Moe, II, Esq.
Luce, Forward, Hamilton & Scripps, LLP
777 South Figueroa Street, Suite 3600
Los Angeles, CA 90071